No. 33,087

B. T. Morris, *Appellee*, v. The Garden City Company, *Appellant*.

(62 P. 2d 920)

Opinion filed December 12, 1936.

*C. E. Vance, Clifford R. Hope,* and *A. M. Fleming,* all of Garden City, for the appellant.

*Ray H. Calihan,* of Garden City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was a workmen's compensation case. The questions at issue before the compensation commissioner and the trial court were the nature and extent of claimant's injuries, the weekly wage, and the amount of compensation allowable.

Respondent operates a beet-sugar factory at Garden City. It employs common laborers throughout the year, and during the sugar-making season of several months in the fall and winter employs additional labor at tasks incident to sugar making which is not used at other times in the year, and during that season pays a slightly higher wage. At the opening of the sugar-making season in 1933 claimant was employed by respondent and worked until his injury, January 12, 1934. Both were operating under the workmen's compensation act, respondent being a self-insurer. Claimant was injured by a rock car flopping over in such a way that the weight of it caught, crushed, and seriously mangled his right foot. He was also struck on the side of the face and on the head above the left eye. He testified that the blow on the head knocked out two teeth and knocked off the skin, but there was no serious cut and no stitches were taken. In their testimony the doctors do not mention the loss of teeth, but do mention a head concussion, some of

them referring to it as slight. He was taken to the hospital at Garden City and later to a hospital at Wichita, where his injuries were treated. The objective head injuries appear to have cleared up readily. The foot injury gave a great deal of trouble. An operation was performed, which was of some benefit. Another operation and amputation were considered, but not performed. In all probability his foot will never be of service to him. He walks only with the aid of crutches. A nervous condition developed, spoken of as neurosis. He continuously complains of various ailments—flashes of heat and cold, numbness in his left side and left leg when he tries to walk, pains and swelling in his right leg to his hip, loss of vision in his left eye, and of hearing in his left ear, and that his kidneys are affected. At times he describes his ailments differently.

Respondent spent for his hospital and medical treatment more than the maximum sum of $500, which it could have been required to pay under the statute (R. S. 1933 Supp. 44-510). It also paid him compensation for nearly two years, when it initiated this proceeding to determine the extent of his injuries and the amount of compensation payable. It took the position claimant's injury is classified by our statute (R. S. 1933 Supp. 44-510 [3] [13] ) as a scheduled injury to his foot, for which its maximum liability was to pay compensation for 125 weeks. It contended that he feigned the ailments of which he complained, for which the physicians could find no physical cause, in order that he might continue to draw compensation for a longer time. In claimant's behalf it is contended he was totally disabled by reason of his injuries and entitled to compensation for total permanent disability.

The several physicians who treated claimant, or who were consulted in the course of the treatment, were unable to find physical causes for the ailments other than the foot injury of which he complained. Those who treated him testified, in substance, that though they were unable to find physical causes for conditions of which he complained, and knew of these only by what he said, that to him they were real; that he believed he had these afflictions; that he was nervous; that it was a mental condition caused or accelerated by his injury, and they characterized it as traumatic neurosis. A contrary view was expressed by one physician, who was consulted about the case, in one of his reports, to the effect that claimant was malingering.

The trial court found, as a result of injuries sustained to his foot, head and face, claimant is suffering from traumatic neurosis; that he is totally disabled, and had been unable to work since his injury, more than two years prior to the hearing in district court, and that how long such total disability would continue is uncertain. Compensation was allowed for temporary total disability, not to exceed 415 weeks, credit being given for compensation previously paid.

The question of the extent of claimant's injuries was a question of fact to be determined by the trial court. We examine the evidence on the point only to see if there is substantial, competent evidence to sustain the finding and judgment of the court. (*Butler v. White Eagle Oil Ref. Co.*, 140 Kan. 202, 205, 34 P. 2d 120.) There is no lack of such evidence here.

It is true, as argued by appellant, that compensation for scheduled injuries is provided in our statute to prevent claims for total permanent disability by a workman who is injured only in some part of his body for which the schedule provides the sole compensation. This court has adhered to the purposes of the statute in this respect. (*Neuhaus v. Hope Engineering Co.*, 132 Kan. 72, 294 Pac. 655; *Schweiger v. Sheridan Coal Co.*, 132 Kan. 798, 297 Pac. 688; *Gallivan v. Swift & Co.*, 136 Kan. 234, 14 P. 2d 665; *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228.) But, from the fact that a workman sustained an injury for which a scheduled compensation is payable, it does not follow that in the same accident he may not have sustained other injuries which, alone or combined with the scheduled injury, totally incapacitate him. (*Fernandez v. Edgar Zinc Co.*, 138 Kan. 735, 27 P. 2d 239.) Here the injury from the same accident was to the foot and to the head. The injury to the foot was severe. The head concussion was spoken of as being slight, but the combined effect was to shatter his nerves to the extent that it affected his mentality. He is a neurotic, totally incapacitated for work. Under the evidence and the findings of the trial court there is no room to say compensation should be limited to that for a scheduled foot injury.

Traumatic neurosis long has been recognized as being compensable under workmen's compensation laws, not only in England (*Eaves v. Blaenclydach Colliery Co., Limited*, [1909] 2 K. B. 73; *Yates v. South Kirby, etc., Collieries, Ltd.*, [1910] 3 B. W. C. C. 418, 3 N. C. C. A. 225; *Charles Wall, Lim. v. Steel*, [1915] 84 L. J. K. B. N. S. 1599, 10 N. C. C. A. 1041), from whence we took our compensa-

tion act (*McCormick et al. v. Coal & Coke Co.*, 117 Kan. 686, 690, 232 Pac. 1071), but in this country under statutes quite like our own. (*Harris v. Castile Mining Co.*, 222 Mich. 709, 193 N. W. 855; *Hunnewell's Case*, 220 Mass. 351, 107 N. E. 934; *Rialto Lead & Zinc Co. v. State Industrial Com.*, 112 Okla. 101, 240 Pac. 96; *Sigley v. Marathon Razor Blade Co., Inc.*, 111 N. J. L. 25, 166 Alt. 518; *Patsaros v. John Eichler Brewing Co.*, 282 N. Y. S. 183.) See, also, cases collected in the annotation 86 A. L. R. 961-966.

A question is presented as to the method of computing claimant's weekly wage and the amount of compensation based thereon. The pertinent portion of the applicable statute reads:

". . . (2) Where prior to accident the rate of wages is fixed by the output of the employee the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six months or so much thereof as shall refer to employment by the same employer. Where the rate of wages is fixed by the hour the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of work involved. In any case the weekly wage shall be found by multiplying the daily wage by . . . the customary number of working days constituting an ordinary week in the character of work involved. . . ." (R. S. 1933 Supp. 44-511.)

The controversy is whether the daily wage shall be calculated as provided in the first sentence above quoted from the statute, or by the second sentence. The first sentence applies only when "the rate of wages is fixed by the output of the employee," as where the employee is paid for piece work. That is not the method used by the respondent in computing the wages of the claimant in this case. He was paid by the hour, hence the computation is made according to the second sentence above quoted from the statute. The trial court so computed it.

We find no error in the record. The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.