No. 42,246

EUGENE B. HAYES, *Appellee*, v. GARVEY DRILLING COMPANY, INC., and CONTINENTAL CASUALTY COMPANY, *Appellants*.

(360 P. 2d 889)

Opinion filed April 8, 1961.

*Tudor W. Hampton*, of Great Bend, argued the cause, and *Jerry M. Ward* and *Herb Rohleder*, both of Great Bend, were with him on the brief for the appellants.

*Hugh D. Mauch*, of Great Bend, argued the cause, and *Melvin O. Nuss* and *Vernon L. Nuss*, both of Great Bend, and *John K. Bremyer*, of McPherson, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is a workmen's compensation case. The only question involved is whether there is substantial evidence in the record to support the finding of increased disability in a proceeding for review and modification of the original award.

On June 6, 1957, while engaged in building a pump shed around the draw works of an oil well, and while standing on a part of the machinery to install roof rafters, claimant momentarily lost his balance and stepped backward onto the pump belts. He was thrown to the ground and suffered severe injuries to his left leg, back and chest, and suffered belt burns on his body. He was hospitalized for ninety-six days and underwent an operation on his knee. His left leg remained numb and his back pained him almost constantly. It is conceded that his accidental injury arose out of and in the course of his employment.

On March 27, 1959, the commissioner found that claimant had suffered a 25.4% permanent partial general disability and made an award accordingly. No appeal was taken from that award.

On June 6, 1959, under the provisions of G. S. 1959 Supp. 44-528, claimant filed an application for review and modification in which he alleged that he was then totally disabled, and prayed for an order increasing the original award on the basis of total disability.

Following a hearing on this application, the record of which was made by and consisted of deposition testimony, the commissioner found—

"that the anxiety tension state for which review and modification is sought, pre-dated the accidental injury suffered by claimant June 6, 1957, and that the application to review and modify the existing award should be denied."

Upon appeal by claimant to the district court the order of the commissioner denying an increased award was reversed, and the pertinent portion of the court's judgment reads:

"(4) That after considering the case as a whole and reading the transcripts, briefs of counsel, and hearing arguments of counsel, I am of the opinion that the claimant is one hundred per cent (100%) totally and permanently disabled as a result of traumatic neurosis and that such condition was directly caused and is a result of the accident and injuries the claimant sustained on the 6th day of June, 1957. The fact that the claimant had a predisposition to a neurosis in that he was a potential psycho-neurotic at the time of the accident is immaterial since the accident was the exciting cause which precipitated the nervous symptoms."

Judgment was rendered accordingly, and the employer and its insurance carrier have appealed.

Before entering into a discussion of the evidence, brief mention should be made of the review and modification statute, 44-528, above. As here material, it provides that at any time before the final payment has been made under or pursuant to any award it may be reviewed by the commissioner, the purpose being to determine whether such award is excessive or inadequate, or that the incapacity or disability of the workman has increased or diminished since the date of the original award. The reason for the statute is of course evident, for, in the very nature of things, the question of the extent of disability in the first instance is oftentimes conjectural. Human nature being what it is, and medical science not being perfect, it is conceivable that a claimant may not be as badly disabled a few weeks or months after the original hearing as he seemed to be at the time the award was made. On the other hand, his condition might have grown much worse. The statute was enacted to meet such a situation and its provisions safeguard the welfare of the workman as well as the employer. (*Williams v. Lozier-Broderick & Gordon,* 159 Kan. 266, 270, 154 P. 2d 126.)

Because of a contention made by respondent appellants, we mention briefly the evidence at the hearing on the original award.

There was considerable testimony concerning the actual physical injuries sustained by claimant. A Dr. Moore testified that in his opinion claimant was suffering 100% disability at that time. He qualified that opinion, however, by stating that his estimate was on the basis of *temporary* total disability until such time as claimant's true condition could be determined by specialists in an Oklahoma City clinic, where Dr. Moore wanted to send him. He further testi-

fied that at that time claimant's condition was to a considerable extent due to a number of conditions, such as worry, mental stress and strain, and the like, all of which, coupled with his physical condition as a result of the injury, brought about what he then considered a 100% disability.

At the hearing on the application for review and modification it was brought out that while in military service in World War II the claimant had been hospitalized on at least three occasions for "emotional and nervous disorders." Certain records of the Veterans Administration were introduced by the testimony of a Dr. Bernstorf, by deposition, and they definitely established that claimant had suffered emotional strain for a number of years.

Dr. Moore also testified by deposition at the hearing for review and modification. Rather than attempt to summarize, we quote excerpts from his testimony:

"A. As far as his original injuries are concerned, I do not feel that there is any change in his physical disabilities at that time. However, there is a psychiatric factor which I call a chronic anxiety reaction which has become worse. I feel that this is largely due to his feeling of inadequacy, his inability to work, his inability to take care of his bills, and that has been progressively worse, and it became so bad that I sent him down to the Veterans' Administration for an evaluation and a work-up there as to what they felt could be done for his psychiatric disorder, and they found no solution for him there, nor did they feel that—

. . . . . . . . . . . . . . .

"Q. Has Mr. Hayes grown worse since the spring of 1959, in so far as his injuries are concerned?

"A. As far as his basic physical injuries are concerned, he remains about the same.

"Q. Do you notice any improvement?

"A. Very little, if any. He complains much more of other things which we cannot attribute to his physical findings. He has been worked over very thoroughly, and it is my opinion that it is psychiatric in origin and due to his chronic anxiety reaction which he has.

"Q. Do you feel that he has developed this since you last testified, or since the spring of this year?

"Mr. Hampton: Objected to as leading and suggestive.

"A. It was apparent in some degree even at the last—at that time that I had seen him—I mean excuse me, at the time I gave the evidence before, but it is more pronounced now, and is very fixed at this time.

"Q. Is it true that individuals sometimes undergo an anxiety reaction after they have had a serious injury, and some men will make a full recovery without any significant involvement or disability, whereas some individuals may become totally disabled by reason of the worrying and the concern and anxiety that follows a serious injury?

"A. That is a mouthful—and you are delving into the psychiatric field, of which I am not an expert. But many people who have some anxiety reactions may under normal circumstances adjust very well and lead fairly happy and normal lives. When a severe incapacitating accident intervenes and this individual then is faced with problems which he can no longer solve, then his anxiety then becomes much more worse—excuse me—much worse, and becomes much more of a problem to him as a result of his injury. Does that answer your question?

"Q. What do you attribute the anxiety and the mental state to, is it the result of the injury?

"A. Well, as a result of the circumstances following after the injury; his inability to work and his increasing indebtedness, he is unable to provide for his wife and children, he is a chronic invalid, which works together and makes him only worse; it is a vicious cycle.

"Q. Is he able to return to any oilfield work at the present time?

"A. No, he is not able to do any labor at all, I believe. In my opinion he is 100 percent totally disabled.

"Q. Can he do any type of work, work in the general field of labor, or any light work such as a desk job or any type of work?

"A. I don't think in his present state he is capable of any kind of work, light work or otherwise.

"Q. And you base this, Doctor, upon the physical findings as well as his nerves and mental reaction to the accident?

"A. He is limited, of course, severely in his physical field of work, but then I think the biggest problem right now lies, not entirely, but a great deal, with his mental outlook, his chronic anxiety reaction, because I don't think anybody would hire him to begin with. I doubt if he could hold a job if they would.

"Q. Based upon your many visits at the office and in the home, as you have testified, based upon the numerous examinations you have made of this individual, do you have an opinion as to the disabilities that he has now?

"A. Yes.

"Q. What is that opinion?

"A. You are talking about in the whole, or do you want each one listed separately?

"Q. I mean just generally.

"A. He is, in my opinion, 100 percent totally disabled.

"Q. That is based upon the facts you have just related here?

"A. Yes."

Respondents argue that inasmuch as Dr. Moore's testimony at both hearings was to the effect that claimant was 100% disabled, it cannot be said he added any substantial testimony at the later hearing upon which the court could base its finding of 100% disability, and, the original award of 25.4% disability being unappealed from, therefore became final.

In so contending we believe that respondents inaccurately construe the testimony of Dr. Moore at the hearing on the original award. It is true that at that time he did state that in his opinion claimant was 100% disabled, but his estimate was on the basis of *temporary* total disability pending further evaluation by specialists, whereas at the later hearing he unqualifiedly expressed the opinion that claimant was "100 percent totally disabled."

The above-quoted portions of the medical testimony speak for themselves. While claimant's physical injuries were principally to his leg, back and chest—the end result was that his mental condition became such as to render him totally disabled—all of which was directly traceable to his accidental injury. Traumatic neurosis, following physical injury, long has been recognized as being compensable under workmen's compensation laws, and the rule is applicable to such injury even though financial and other worries play a part. (*Morris v. Garden City Co.*, 144 Kan. 790, 792, 62 P. 2d 920; *Barr v. Builders, Inc.*, 179 Kan. 617, syl. 4, 296 P. 2d 1106.) Furthermore, it is well-settled that the workmen's compensation act prescribes no standard of health for workmen, and where a workman is not in sound health but is accepted for employment and a subsequent industrial accident suffered by him aggravates or accelerates an existing disease, or intensifies the affliction, he is not to be denied compensation merely because of such pre-existing condition. (*Strasser v. Jones,* 186 Kan. 507, 511, 350 P. 2d 779.)

In *Jones v. Western Union Telegraph Co.*, 165 Kan. 1, 192 P. 2d 141, it was said:

"The same legal principles control a case which develops from a review and modification that apply to an original hearing in a compensation case. On appeal to the district court from the award of the commissioner, in such cases, that court has the duty to determine from conflicting evidence whether there has been a change in the physical condition of a claimant, and this court cannot change the district court's findings if they are supported by substantial competent evidence. The situation is practically the same as it is in original hearings." (p. 8.)

This record contains substantial evidence to support the court's finding that claimant was suffering 100% permanent disability as a result of traumatic neurosis; that such condition was directly caused by and was a result of his accidental injuries, and that claimant's predisposition to a neurosis was immaterial in view of the fact his injury was the exciting cause which precipitated his nervous symptoms.

The judgment is therefore affirmed.