(708 P.2d 216)

No. 56,53█

Roberta L. Ruse, *Claimant,* v. Sedgwick County, *Respondent and Self-Insured, Appellees,* and Roberta L. Ruse, *Claimant-Appellee,* v. State of Kansas, *Respondent,* and State Self-Insurance Fund, Insurance Carrier, *Appellants,* and Kansas Workers' Compensation Fund, *Appellee.*

Opinion filed December 6, 1984.

*Robert L. Peter,* of Great Bend, for the appellants.

*Artie E. Vaughn,* of Vaughn & Updegraff, of Wichita, for the appellee, Roberta L. Ruse.

*Brock R. McPherson,* of McPherson, Bauer & Pike, Chtd., of Great Bend, for the appellee, Kansas Workers' Compensation Fund.

*E. L. Lee Kinch,* of Ratner, Mattox, Ratner, Barnes & Kinch, P.A., of Wichita, for the respondent-appellee.

Before Rees, P.J., Meyer, J., and John W. Brookens, District Judge Retired, Assigned:

Meyer, J.: This is a workers' compensation action by appellee Roberta Ruse (claimant). Separate actions were filed against Sedgwick County and the State of Kansas. The actions were consolidated in the Division of Workers' Compensation. On November 16, 1983, the administrative law judge awarded judgment in favor of claimant and against the State of Kansas, appellant, and State Self-Insurance Fund, its insurance carrier. The District Court of Sedgwick County affirmed the award of the administrative law judge. The State of Kansas appeals.

Appellant first contends the district court erred in ruling claimant suffered a compensable traumatic neurosis as a result of her injury while employed by the State of Kansas. Appellant argues there was insufficient evidence to support the ruling of the trial court; and further, that claimant failed to sustain her burden of proof regarding causation.

In Kansas, traumatic neurosis or conversion hysteria (The terms are synonymous. See *Berger v. Hahner, Foreman and*

*Cale, Inc.,* 211 Kan. 541, 544, 506 P.2d 1175 [1973]) directly traceable to an on-the-job physical injury is compensable under the workers' compensation laws. *Hayes v. Garvey Drilling Co.,* 188 Kan. 179, Syl. ¶ 2, 360 P.2d 889 (1961). See also *Jacobs v. Goodyear Tire & Rubber Co.,* 196 Kan. 613, 412 P.2d 986 (1966); *Barr v. Builders, Inc.,* 179 Kan. 617, 296 P.2d 1106 (1956); and *Morris v. Garden City Co.,* 144 Kan. 790, 62 P.2d 920 (1936). It appears from the cases and statutes that four elements must be shown for a compensable traumatic neurosis or a conversion hysteria claim to exist. These elements are: 1) a physical injury, 2) claimant has symptoms of traumatic neurosis or conversion hysteria, 3) these symptoms are directly traceable to the physical injury, and 4) there is a causal connection between the work claimant performed and the neurosis. See K.S.A. 44-501; and *Buck v. Beech Aircraft Corporation,* 215 Kan. 157, 161, 523 P.2d 697 (1974).

Courts are more cautious in compensating for psychic injuries than purely physical ones because of the subjective nature of psychological problems. The claimant bears the burden of proving by a preponderance of the evidence that the neurosis exists and that it was caused by an accident arising out of and during the course of his or her employment. *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. at 550. In addition, if the claimant's psychiatric problems did not result from the nature and requirements of the claimant's job, or are the result of external forces over which the employer has no control, then there is no causal connection between the claimant's mental disability and the work being performed and, consequently, claimant cannot recover compensation. *Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 828, 518 P.2d 518 (1974).

The district court adopted in full the administrative law judge's findings of fact. The findings adopted are very complete and specifically encompass all of the four elements hereinabove found to be necessary to support a compensable traumatic neurosis or conversion hysteria claim.

Appellant argues that the district court's findings of causation, as adopted from the administrative law judge, are based on insufficient evidence and that the evidence which was presented does not support the requirement that claimant's injuries be

directly traceable to the work being performed at the time of injury.

The issue of causation, that is the issue of whether the mental problem is directly traceable to the physical injury, is a question of fact for the district court. *Deines v. Greer*, 216 Kan. 548, 550, 532 P.2d 1257 (1975). On appeal, the rule regarding review of factual findings in workers' compensation cases is that the findings are conclusive if supported by substantial competent evidence. *Day and Zimmerman, Inc. v. George*, 218 Kan. 189, 542 P.2d 313 (1975). This scope of review is quite narrow. As stated in *Crabtree v. Beech Aircraft Corp.*, 5 Kan. App. 2d 440, 442, 618 P.2d 849 (1980), *rev'd on other grounds* 229 Kan. 440, 625 P.2d 453 (1981):

"Under K.S.A. 1979 Supp. 44-556(c), our scope of review is limited to questions of law. The question of whether a district court's judgment is supported by substantial evidence is one of law and if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the district court's factual findings, this Court is bound by those findings and has no power to weigh the evidence or reverse the final order of the court. The term 'substantial evidence' when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. Although this Court may feel the weight of the evidence as a whole is against the findings of fact made by the district court, it may not disturb those findings if they are supported by substantial competent evidence. *Crow v. City of Wichita*, 222 Kan. 322, 332-33, 566 P.2d 1 (1977)."

Applying the rules above to the instant case, it appears there was substantial evidence to support the district court's finding that claimant's injuries were traceable to, and caused by, her employment. The following evidence was before the court:

1. Dr. Wellshear, a psychiatrist, testified that although claimant had preexisting problems with dependency, "the *injury* gave her an unconscious method or gave her unconsciously a way to express some of those conflicts about dependency versus independence." (Emphasis added.) He further stated that claimant "unconsciously saw [the injuries] as opportunities to express—to attend to some unconscious needs . . . ."

2. Although claimant had a history of stress and tension, she continued to function normally and perform her duties accordingly until, in the words of Dr. Wellshear, "her psychi [*sic*], her unconscious *used that injury* as a fortuitous oc-

currence in a sense" to relieve herself from the stressful working environment and take days off. (Emphasis added.)

3. Claimant's doctor recommended she not return to work, stating: "But I think the Court Service Officer with just constant different kinds of things going to like a ringmaster, . . . serving the egos of a variety of people, both the accused, the attorneys, the judges, relatives and so on. You know, I think that could be a very stressful, very difficult job for anybody so I don't see her as being able to manage any better than she was."

4. When one of claimant's doctors, Dr. Barnett, was questioned whether the pain and back problems claimant had told him were afflicting her were caused by claimant's injury, the doctor responded by stating, "The history [of claimant's problems] as described *is compatible* with her having had muscle strain at the time in December when she claims to have been injured." (Emphasis added.)

5. Even though claimant was injured in 1978, she continued to work at her job despite occasional flare-ups until the 1980 injury prevented her from returning.

Appellant argues, however, that claimant was a "psychological accident waiting to happen" and that no one was able to state positively that the injuries caused claimant's neurosis. Considering the subjective nature of any psychological injury it would be difficult to say any *undisputed* evidence either for or against causation was present. Rather, this case required a weighing of credibility and balancing of common sense which is the particular province of the district court. Further, while testimony such as that disclosed in this record can reasonably be the subject of opposite interpretations and even support opposing conclusions, the test is whether the record contains any substantial competent evidence which on any theory justifies the trial court's findings. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 196, 542 P.2d 313 (1975).

Appellant argues that claimant's problems are the result of external forces and not her job and cites as support the case of *Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 518 P.2d 518 (1974). *Rund,* however, involved a situation different from the instant case. *Rund,* like the case now before the court, did concern a claimant who suffered a fall on the job and consequently began outwardly manifesting her previous emotional and mental prob-

lems. In *Rund*, the Kansas Supreme Court held the mental problems were caused by external forces and not the job-related injury, and thus denied compensation. The key to distinguishing *Rund* from the case now before the court, however, is the nature of each claimant's injury and mental and emotional problems. In *Rund*, the claimant suffered mental problems relating to an unresolved guilt complex over sexual matters. Her problem with her own sexuality clearly was not related to her job with Cessna Aircraft. In the present case, claimant suffers from mental and emotional problems associated with stress and tension. These are characteristics of her job and thus claimant's problems are symptomatically connected to her employment. Thus, while it may not be possible to prove causation with certainty, it cannot be said there is no relationship between the stress and tension of claimant's job and the stress and tension causing claimant's mental and emotional problems. And as long as there is substantial evidence before the district court upon which to base its findings, the decision of the district court must be affirmed.

Appellant next contends the district court committed error by assessing all the award against the State of Kansas instead of assessing a portion of the award against the Kansas Workers' Compensation Fund.

For an employer to escape liability to an injured workman, the employer must show that he knowingly either hired or retained a handicapped person. (K.S.A. 1983 Supp. 44-567.) "Handicapped employee" is defined in K.S.A. 1983 Supp. 44-566(b). If an employer meets these tests he is not liable for injuries that would not have occurred "but for" the preexisting impairment (K.S.A. 1983 Supp. 44-567[A]); and additionally, if the preexisting condition contributed to the later injury for which recovery is sought, the employer is then liable for an amount determined by apportioning the liability attributable to claimant's disability between that caused by the preexisting injury and that caused by the current injury. (K.S.A. 1983 Supp. 44-567[B].)

Thus, the initial burden is on the State of Kansas, in the instant case, to show either that it had knowledge of claimant's preexisting mental and emotional problems or that it gained such knowledge during the course of claimant's employment but retained her regardless of such knowledge.

The district court adopted the following findings of the administrative law judge:

"8. The respondent and insurance carrier have asked that a portion or all of any award be set off against the Workers' Compensation Fund. It is necessary before any award be set off against the Fund that several things be proven by the respondent and insurance carrier. First, it must be shown that claimant was hired or retained in her employment with knowledge that she had a handicap. There is no evidence that claimant was hired with that knowledge. There was some testimony concerning whether or not respondent and insurance carrier knew of claimant's pre-existing condition. A Form 88 was filed with the Director's office, which was verified by this Judge, on March 22, 1979. This form simply shows 'Robert [sic] Ruse No. 17'. No. 17 is the catch-all phrase on a Form 88 indicating any other physical condition that may constitute a handicap. There is no specific showing on the Form 88 of any particular type of handicap. Donald Farr, who is the Court Administrator and had been so since January 1, 1976, said there was in Roberta Ruse's file a Form 88 showing a 'ruptured disc'. Mr. Farr says he did not know which disc in claimant's back was ruptured nor did he had [sic] any specific knowledge pertaining to claimant's condition. Judge Klein testified that he knew the claimant had a lot of personal problems and that she was hurting physically when she worked for him in May, 1981. He said he didn't see the claimant and she did not work under him between April, 1978, and December 8, 1980. Mr. Farr said that he had never been told prior to December 1980, that there were things claimant shouldn't or couldn't do physically. He did not consider the claimant to be handicapped.

". . . The Judge has concluded that all of claimant's disability results from her conversion reaction and that respondent and insurance carrier had no knowledge of her psychiatric problems prior to December 8, 1980. The Judge is not satisfied that the respondent and insurance carrier had knowledge of claimant's pre-existing back condition prior to December 8, 1980. The Judge would find that the respondent and insurance carrier have failed in their burden to prove liability on the part of the Workers' Compensation Fund and would not order that any liability be set off against the Workers' Compensation Fund."

Appellant argues there was insufficient evidence before the district court from which it could base its findings of fact. Appellant points out there was testimony by Dr. Wellshear that claimant's mental and emotional problems were preexisting and that, although the State of Kansas did not have specific knowledge of the exact kind of problem claimant had, it did possess general knowledge of her problems, as evidenced by the fact that a Form 88 was on file in claimant's records with a check-mark by the caption "Other Physical Impairment," and the fact that Judge Klein knew generally of claimant's personal problems. This, the State argues, was sufficient to cause the scope of K.S.A. 1983 Supp. 44-567 to come into play.

Again appellant seeks to have us consider the evidence presented before the trial court which is in its favor and, in effect,

would have us re-try the case and believe facts which quite obviously did not impress the trial court. In this vein appellant asks that we give emphasis to the fact the employer knew she had some sort of trouble, mentally or emotionally, before the injury for which she has now obtained remuneration. In short though, the filing of a Form 88, standing alone, does not import such knowledge, nor does the inclusion thereon of "ruptured disc" constitute sufficient knowledge to shift the burden of liability.

In *Carter v. Kansas Gas & Electric Co.*, 5 Kan. App. 2d 602, 607, 621 P.2d 448 (1980), this court analyzed Kansas cases concerning handicapped employees and the scope of review used to determine whether an employee was "knowingly" retained or not. The *Carter* court set out certain principles for use in making such a determination. We will not repeat those principles here, but conclude that, applying them to the instant case, the trial court was correct in concluding nonliability of the Fund.

For example, the district court found the Form 88 filed in the State of Kansas' files on claimant was inadequate and did not supply the State with any particularized knowledge of claimant's condition. Further, the district court found the judge claimant worked for may have had some knowledge of claimant's personal life and problems, but that he did not see claimant at all during the time period between the first and second injury. Finally, the district court noted that Donald Farr, the Court Administrator, said he had no specific knowledge regarding claimant's back condition. As in *Carter*, these are negative findings. The State does not point to any "undisputed evidence" which it claims the court arbitrarily disregarded. The court found the State was aware of claimant's 1978 injury, but that this knowledge alone was insufficient to provide the State with knowledge claimant was "handicapped."

The court had evidence before it that although a Form 88 was filed with the Division of Workers' Compensation on March 22, 1979, the claimant testified the signature on the Form 88 was not hers. Mr. Farr testified that there was no information in the claimant's file regarding the 1978 accident. Mr. Farr also stated that claimant was evaluated on July 18, 1980, and again on October 18, 1981, receiving an overall rating of "good" both

times. Mr. Farr stated he never considered claimant handicapped in any way.

Thus, the evidence before the court was such that the district court could have found the State of Kansas did not have knowledge that claimant was "handicapped" and therefore did not retain her as a handicapped employee. Although it is not necessary the State of Kansas have knowledge of claimant's specific disease or mental or emotional problem in order to "knowingly" retain a "handicapped employee," it cannot be said mere general knowledge of a claimant's injury in every case is sufficient. As in *Carter*, ". . . a particular back injury need not affect the employee's work ability or employment possibilities. It cannot be simply assumed that a single trauma back injury is likely to have recurring effects, particularly when the employee is released to full work duty by his or her doctor." 5 Kan. App. 2d at 607. Such was the case in *Carter*, and such is the case here.

On the record in this case, then, it cannot be said the court erred in finding the State of Kansas to have failed in its burden of proof.

Finally, appellant argues the district court erred in ruling claimant did not suffer any permanent partial disability or permanent total disability as a result of the accident on April 6, 1978, while claimant was working for Sedgwick County. The appellant complains that it was error for the court to make the above ruling and for its failure to assess part of the award against Sedgwick County.

Reviewing the evidence before the court, Dr. Poole testified that claimant was without symptoms when he last saw her prior to the second injury and that ". . . at the last time that I saw this patient in 1979, I thought the patient did not have any permanent disability attributable to the events of 1978." In addition, Dr. Barnett also testified that as to the April 1978 injuries, "I would not expect her to have permanent problems from this." Further, Dr. Wellshear testified that in August 1979 claimant was free from the pain and problems which had been plaguing her since the April 1978 accident. Dr. Wellshear stated, "At that moment in time, the history suggests that she was between symptoms."

This evidence possesses substance and relevance and, in our opinion, furnishes a substantial basis of fact which supports the conclusion of the trial court that Sedgwick County was not liable for any part of the award.

Affirmed.

REES, J., concurring: As this case comes before us, it is apt to describe it as a "fact case." The majority concludes it should be affirmed. I agree.