(959 P.2d 469)
No. 77,775

GERALD BOUTWELL, *Appellee*, v. DOMINO'S PIZZA, *Respondent*, and KANSAS WORKERS COMPENSATION FUND, *Appellant*.

Opinion filed May 15, 1998.

*Steven L. Foulston*, of Law Office of Steven L. Foulston, P.A., of Wichita, for the appellant.

*Michael T. Harris*, of Patterson & VanZandt, L.C., of Wichita, and *Francis Hesse*, of Redmond, Redmond & Nazar, of Wichita, for the appellee.

Before PIERRON, P.J., LEWIS, J., and ROBERT J. SCHMISSEUR, District Judge, assigned.

PIERRON, J.: The Workers Compensation Fund (Fund) appeals from an award finding Gerald Boutwell permanently and totally disabled.

Boutwell had a history of schizoaffective disorder. From 1979 to 1989, he held a variety of jobs, including salvage yard worker, hospital orderly, backhoe operator, and carpenter. Boutwell saw Dr. J. Luis Ibarra beginning in 1979 for his mental disorders. Dr. Ibarra treated him with psychotherapy and psychotropic medications. Boutwell had severe ongoing psychiatric problems, resulting in an

involuntary commitment and other hospitalizations. Following Dr. Ibarra's retirement, Boutwell was treated by Dr. Poly Tan.

Boutwell began working for Domino's Pizza in March 1989. While delivering a pizza to an apartment complex, he was attacked in an attempted robbery and received nine knife stab wounds. The attack resulted in injuries to his knees, the loss of a kidney, and the removal of part of his colon.

On October 13, 1989, Boutwell applied for workers compensation. He subsequently impled the Workers Compensation Fund (Fund). The Fund then brought a civil action against Domino's seeking reimbursement, and that action was eventually settled. In 1996, the administrative law judge (ALJ) entered an award finding the attack had aggravated Boutwell's mental condition, resulting in permanent and total disability. The Workers Compensation Board (Board) adopted the ALJ's findings and conclusions and affirmed the award. The Fund timely appeals.

The Board found Boutwell suffered post-traumatic stress disorder and was therefore eligible for compensation. The Fund argues on appeal that the evidence does not support this conclusion, either as a matter of fact or as a matter of law.

This court will uphold the Board's finding if it is supported by substantial competent evidence, which is evidence possessing something of substance and relevant consequence and carrying fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue can be reasonably resolved. *Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 26, 947 P.2d 1 (1997).

The evidence in the record amply supports the Board's factual conclusions. Following the attack, Boutwell complained of inability to sleep. He reported he experienced greater anxiety about being among people and experienced greater anger. He reported increased depression and spontaneous crying. He stated he was no longer able to compete, tolerate other people, or concentrate on a job with sufficient ability to hold regular employment.

Dr. Ibarra, now retired, was a licensed psychiatrist with extensive experience in psychiatric practice. Although Dr. Ibarra is not board-certified in psychiatry, he was a licensed practicing psychi-

atrist and had been qualified as an expert in several trials. He met with Boutwell a number of times both before and after the attack. Dr. Ibarra testified Boutwell's mental state began to deteriorate after the attack. He began to manifest anger in ways he had not done before. Dr. Ibarra attributed the mental deterioration to the distress resulting from the assault.

Dr. Ibarra noted that Boutwell had difficulty discussing the assault and appeared to be in denial about its effects on him. He testified the anxiety resulting from the assault precluded Boutwell from employment. Dr. Ibarra testified that while Boutwell had been marginally employable before the attack, he no longer had the ability to work. Dr. Ibarra increased Boutwell's diagnosed disability from at least 50% to 100% based on his ongoing observations. Dr. Ibarra testified Boutwell suffered from post-traumatic stress disorder. Dr. Tan also provided evidence of psychological disability.

The Fund offered witnesses who testified by deposition that Boutwell suffered no lasting psychological effects from the attack. Dr. Neil Roach testified Boutwell had become emotionally stronger as a result of the attack. He claimed Boutwell had a "greater sense of omnipotence" as a result of the attack and was better able to resolve his anger. Although Dr. Roach saw signs of delusional and disorganized thinking, he observed little negative impact from the stabbing. In fact, Dr. Roach concluded that Boutwell was more stable and psychologically better off after the stabbing. He saw no evidence of post-traumatic stress disorder. Dr. Roach's analysis was based on written tests and one consultation with Boutwell.

Dr. George Dyck testified that testing showed the attack had exacerbated Boutwell's withdrawal and suspiciousness but did not cause the onset of the symptomatology. He found no evidence of post-traumatic stress disorder. Dr. Dyck believed Boutwell would have had a marginal ability to maintain employment even without the attack. He expressly disagreed with Dr. Ibarra's conclusions and his basis for those conclusions.

The appellate court cannot pass on the credibility of witnesses or weigh conflicting evidence. *City of Wichita v. Rice*, 20 Kan. App.

2d 370, 373, 889 P.2d 789 (1995). It is the function of the administrative hearing body to determine the weight or credibility of the testimony of witnesses. See *Swezey v. State Department of Social & Rehabilitation Services*, 1 Kan. App. 2d 94, 98, 562 P.2d 117 (1977). Although the ALJ could have elected to believe Dr. Dyck or Dr. Roach, he accepted the testimony of the two treating physicians, Dr. Ibarra and Dr. Tan. Given the severity of the attack and the preexisting condition, this decision appears reasonable. With our standard of review, it is very difficult to see how the Fund could possibly expect a reversal on this ground.

The Board also found the attack aggravated Boutwell's preexisting schizophrenia. The Fund argues that the evidence does not support this conclusion and, taking a position of greater persuasiveness, that the law does not permit compensation for aggravation of a preexisting psychiatric condition.

Again, this court will not reweigh the evidence. The Board's conclusion that the attack aggravated Boutwell's psychological problems appears reasonable and is supported by substantial credible evidence with which we will not burden the record by repeating.

Of far greater difficulty is the question of whether an *aggravation* of a mental condition is compensable under our Workers Compensation Act.

The history of this issue in the appellate courts of Kansas is long and somewhat puzzling.

*Hayes v. Garvey Drilling Co.*, 188 Kan. 179, 360 P.2d 889 (1961), initially involved an injury which occurred when Hayes stepped backwards onto some pump belts and was thrown to the ground, causing serious injuries to his left leg, back, and chest, as well as other injuries.

Sometime after the commissioner made an unappealed finding that Hayes had suffered a 25.4% permanent partial general disability, Hayes filed an application for review and modification in which he alleged he was totally disabled due to psychiatric problems. He prayed for an order increasing the original award to one of total disability.

Following a hearing on the request, the commissioner found " 'that the anxiety tension state for which review and modification is sought, pre-dated the accidental injury suffered by claimant June 6, 1957, and that the application to review and modify the existing award should be denied.' " 188 Kan. at 180.

The district court reversed on appeal, saying:

" '(4) That after considering the case as a whole and reading the transcripts, briefs of counsel, and hearing arguments of counsel, I am of the opinion that the claimant is one hundred per cent (100%) totally and permanently disabled as a result of traumatic neurosis and that such condition was directly caused and is a result of the accident and injuries the claimant sustained on the 6th day of June, 1957. The fact that the claimant had a predisposition to a neurosis in that he was a potential psycho-neurotic at the time of the accident is immaterial since the accident was the exciting cause which precipitated the nervous symptoms.' " 188 Kan. at 181.

The Supreme Court noted:

"At the hearing on the application for review and modification it was brought out that while in military service in World War II the claimant had been hospitalized on at least three occasions for 'emotional and nervous disorders.' Certain records of the Veterans Administration were introduced by the testimony of a Dr. Bernstorf, by deposition and they definitely established that claimant had suffered emotional strain for a number of years." 188 Kan. at 182.

Finally, the Supreme Court said:

"The above-quoted portions of the medical testimony speak for themselves. While claimant's physical injuries were principally to his leg, back and chest—the end result was that his mental condition became such as to render him totally disabled—all of which was directly traceable to his accidental injury. Traumatic neurosis, following physical injury, long has been recognized as being compensable under workmen's compensation laws, and the rule is applicable to such injury even though financial and other worries play a part. (*Morris v. Garden City Co.*, 144 Kan. 790, 792, 62 P.2d 920 [(1936)]; *Barr v. Builders, Inc.*, 179 Kan. 617, [Syl. ¶]4, 296 P.2d 1106 [(1956)].) Furthermore, it is well-settled that the workmen's compensation act prescribes no standard of health for workmen, and where a workman is not in sound health but is accepted for employment and a subsequent industrial accident suffered by him aggravates or accelerates an existing disease, or intensifies the affliction, he is not to be denied compensation merely because of such pre-existing condition. (*Strasser v. Jones*, 186 Kan. 507, 511, 350 P.2d 779 [1960])" 188 Kan. at 184.

From these statements it appears that *Hayes* clearly stands for the proposition that a preexisting mental condition which is aggravated by a work-related physical injury *is* compensable under the Workers Compensation Act if it has an impact on the ability to work.

In *Jacobs v. Goodyear Tire & Rubber Co.*, 196 Kan. 613, 412 P.2d 986 (1966), the court was presented with an employee who was caught between the alleged conflicting demands of his employer, who wanted a maximum number of tires built, and fellow employees, who wanted the production standard to be lower than that desired by management. Jacobs claimed the psychological stress this caused him led to a compensable psychiatric illness. There was *no* physical injury involved.

The *Jacobs* court stated:

"[I]t appears that claimant's difficulty resulted from conflicts created by the opposing demands of management and union co-employees rather than the nature and requirements of his job. Such testimony would support the conclusion that there was no causal connection between the work being performed and claimant's condition. Moreover, the demands of the co-employees were an external force over which management had no control or responsibility, and without them, it is speculative whether or not claimant would have encountered any difficulty." 196 Kan. at 617.

In *Berger v. Hahner, Foreman & Cale, Inc.*, 211 Kan. 541, 506 P.2d 1175 (1973), Marvin Berger, while on a construction site, was struck in the right eye by a 2 × 4 board which eventually caused him to lose useful vision in that eye. Psychiatrists testified that crippling psychiatric problems had been generated by Berger's reaction to this injury and its impact, along with other preexisting conditions, on his ability to work.

The ALJ and the trial court denied compensation for the psychiatric problems, as they believed the eye difficulty was a scheduled injury and there was no other injury "to a nonscheduled portion of the anatomy to support the general disability." 211 Kan. at 543.

The Supreme Court reversed:

"It is firmly established in this jurisdiction that traumatic neurosis, following physical injury and shown to be directly traceable to the injury, is compensable

under the Workmen's Compensation Act. ([*Jacobs*, 196 Kan. 613; *Hayes*, 188 Kan. 179; *Barr*, 179 Kan. 617; and *Morris*, 144 Kan. 790.]) The rule in this jurisdiction is in line with that followed generally. In this connection Vol. 1A Larson Workmen's Compensation Law, § 42.22, p. 622.162 has this to say:

'. . . [W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. . . .' " 211 Kan. at 544.

The court in *Rund v. Cessna Aircraft Co.*, 213 Kan. 812, 518 P.2d 518 (1974), found that Mable Rund was apparently injured in a work-related accident. The determination of her physical injury caused the court no difficulty. It was the alleged aggravation of a psychosexual problem which lead to a 4-3 split on the court, with the majority denying coverage based on that complaint. The majority stated:

"In [*Hayes*], the court was confronted with traumatic neurosis. There the district court found the claimant 100% totally and permanently disabled as a result of traumatic neurosis and that such condition was *directly caused* and was the result of the accident and injuries sustained by the claimant. On appeal the judgment of the trial court was affirmed on the ground that claimant's mental condition which rendered him totally disabled was *directly traceable* to his accidental injury which disabled him. The claimant's mental condition was described as a chronic anxiety reaction. In the opinion the court said:

'. . . Traumatic neurosis, following physical injury, long has been recognized as being compensable under workmen's compensation laws, and the rule is applicable to such injury even though financial and other worries pay a part. . . . [*Hayes*, 188 Kan. at 184].'

" 'Traumatic neurosis' is defined as 'A neurotic condition brought on by an injury.' Trauma is defined as 'An injury caused by mechanical violations, as a blow, twist, etc.' (2 Schmidt's Attorneys' Dictionary of Medicine, p. 900.7.)

"The testimony of Dr. Moe is that the claimant is unable to return to work at Cessna due to inner conflicts arising from guilt over sexual matters." 213 Kan. at 824-25.

The *Rund* court reviewed *Jacobs* and noted:

"In upholding the trial court this court recognized it had on numerous occasions held *traumatic neurosis* following physical injury, and shown to be directly traceable to such injury, to be compensable under the act. But the court said, this rule had no application where the district court found that although claimant's difficulty was the result of mental illness, he had suffered no physical injury.

"If the court had given full scope to the rule asserted by the appellee—that an employer accepts the employee with the pre-existing weaknesses in the employee at the time of her employment, and that it applies equally in psychiatric weakness as other physical weaknesses—then the court in *Jacobs* should have reversed the trial court. Certainly, the mental breakdown in the *Jacobs* case was attributable to the claimant's employment." 213 Kan. at 826.

The *Rund* court then stated: *"Berger* stands for the proposition that *traumatic neurosis* following physical injury, and shown to be *directly traceable* to such injury, is compensable under the Workmen's Compensation Act." 213 Kan. at 827.

The court then turned to Mrs. Rund's problems:

"To determine the point presently before the court we start with the proposition that psychiatric problems which cause disability of a workman, like any other compensable disability, must have a direct causal connection between the work being performed and the neurosis.

"Dr. Moe, the only psychiatrist to testify in the case, did not diagnose the claimant's condition as being that of *traumatic neurosis* or *conversion hysteria*, which the court in *Berger* recognized as synonymous terms. Dr. Moe's testimony was that the claimant demonstrated an 'obsessive compulsive' personality, and indicated a high degree of anxiety with a tendency toward hypochondriasis, and immaturity to a surprising degree. The primary aspect of Dr. Moe's testimony is his opinion that the claimant had unconsciously resolved her *inner guilt feelings over sexual matters* by simply remaining away from the Cessna plant, and that the 'injury' claimed has enabled her to remain away. In this respect, the claimant, according to Dr. Moe has indicated a tendency to convert her inner tensions to physical complaints.

"The examiner in this case merely found that the claimant had 'emotional problems'. He made no finding that the claimant suffered traumatic neurosis or conversion hysteria. The district court *adopted* as its decision the award, findings and decision of the examiner, as approved by the director. Both the examiner and the district court found the claimant's emotional problems had been exacerbated by the accident. In other words that the claimant's *emotional problems* have become more intense as a result of the accident. There is *no* finding that the claimant's *emotional problems* were *directly traceable to the work being performed* by the claimant at the respondent's plant *or to the accident.*

"This court has not previously held that 'emotional problems' based on mental conflicts arising from guilt over sexual matters at the place of employment are compensable under the Workmen's Compensation Act.

"The significance of *Jacobs* is that if claimant's psychiatric problems do not result from the nature and requirements of the claimant's job, or are the result of external forces over which the employer has no control, then there is no causal

connection between the claimant's mental disability and the work being performed.

"By analogy the claimant's *emotional problems* in the instant case, that of inability to return to Cessna due to her inner conflicts over sexual matters, do not arise from the nature and requirements of her job. Claimant's job was that of building pumps, deburring, working on a gear bench, some lifting of parts and tightening some nuts and bolts. Claimant, for pure personal reasons over which management had no control, chose to wear provocative clothing, spend excessive time with make-up and be sexually provocative with male employees. The testimony of Dr. Moe is uncontradicted that the claimant's 'condition'—an inability to return to Cessna for work—is due to her unconscious guilt feelings over sexual matters, and that she resolves her problem merely by staying away from Cessna. Her emotional problems, therefore, are not causally connected to the nature and requirements of her job, but to her anxieties and inner tensions created by her conduct on the one hand and her sense of morality on the other.

. . . .

"We conclude that there is no evidence presented by the record and no finding by the trial court that the claimant's 'emotional problems' were caused by the accident concerning which she complains. The evidence, at best is that the accident exacerbated her existing 'emotional problems'. This is insufficient to meet the requirement that the claimant's 'emotional problems' be directly traceable to the accident." 213 Kan. at 827-29.

In *Buck v. Beech Aircraft Corporation*, 215 Kan. 157, 523 P.2d 697 (1974), the court cited general rules concerning when mental problems arising out of a compensable work-related injury might also be compensable, but agreed with the trial court that no connection between the physical and mental problems had been proven.

*Followill v. Emerson Electric Co.*, 234 Kan. 791, 674 P.2d 1050 (1984), dealt with a mental problem which arose out of a worker's mental difficulties caused by a grisly fatal accident to *another* worker. The court, citing the requirements that there be a physical injury to the claimant, such as there was in *Hayes*, denied coverage.

Another step in our analytical journey is provided by *Love v. McDonald's Restaurant*, 13 Kan. App. 2d 397, 771 P.2d 557, *rev. denied* 245 Kan. 784 (1989). In *Love*, an employee with no previous history of mental problems apparently started to have traumatic neurosis because of a job related fall/injury. The claim on the neurosis was denied under *Ruse v. State*, 10 Kan. App. 2d 508, 708 P. 2d 216 (1984), because it failed to meet the fourth element of the

*Ruse* test for traumatic neurosis coverage: that there is a causal connection between the work claimant performed and the neurosis. The *Ruse* court apparently drew this from its reading of *Rund*, finding:

"[I]f the claimant's psychiatric problems did not result from the nature and requirements of the claimant's job, or are the result of external forces over which the employer has no control, then there is no causal connection between the claimant's mental disability and the work being performed and, consequently, claimant cannot recover compensation. [*Rund*, 213 Kan. at 828.]" 10 Kan. App. 2d at 509.

### *Love* overruled *Ruse* on this fourth element:

"In *Ruse*, instead of recognizing two separate ways to establish a compensable traumatic neurosis claim depending on the presence or absence of physical injury, we established a *single* and more difficult test. Under *Ruse*, traumatic neurosis was compensable *only if* the mental disability were directly traceable to a work-related physical injury *and* could also be causally connected to the conditions and requirements of claimant's job.

"In *Ruse*, we established a test not justified by historic case law.

"Additionally, the *reason* for the requirement of a causal connection with the work performed, as articulated in *Jacobs*, no longer exists. Since the reason for that 'rule' no longer exists, we hold the 'rule' itself can no longer exist.

'In [*Followill*, 234 Kan. 791], a case not considered in *Ruse*, the Supreme Court explicitly held that traumatic neurosis is *not* compensable *absent a physical injury* because mental injury standing alone is not a 'personal injury' as defined by the Workers' Compensation Act. 234 Kan. at 795-96.

"The court stated: 'We hold, in accordance with an unbroken line of worker's compensation cases in this state, that the obligation of an employer under K.S.A. 44-501 *et seq. does not extend* to mental disorders or injuries *unless* the mental problems stem from *an actual physical injury* to the claimant.' 234 Kan. at 796. (Emphasis added.)

"As we read *Followill*, the possibility of a compensable traumatic neurosis absent physical injury—as explored in *Jacobs*—simply no longer exists in Kansas. As a result, we feel comfortable in returning to the clear statement of the rule as enunciated in the earlier cases such as *Morris* and *Barr*.

"We therefore hold that traumatic neurosis, following and directly traceable to a work-related physical injury, *is* compensable. As a result, the four-part test of *Ruse* is overruled." *Love*, 13 Kan. App. 2d at 400-01.

### Earlier in his opinion in *Love*, Judge Elliott noted:

"Syl. ¶ 7 of the *Rund* opinion stated:

'In a workmen's compensation case if the claimant's psychiatric problems do not result from the nature and requirements of the claimant's work, or are the result of external forces over which the employer has no control, there is no causal connection between the claimant's mental disability and the work being performed, and compensation cannot be awarded for the mental disability.'

"This syllabus paragraph is simply overbroad, if not inaccurate, in that it reflects the portion of the opinion which discusses *Jacobs*, in which *no physical injury was* present, and describes but a portion—not the whole—of the test then applicable for determining the compensability of traumatic neurosis *absent physical injury.*" 13 Kan. App. 2d at 399.

Of course, *Love* dealt with a mental condition that did *not* pre-exist the injury. But whether there should be a broad reading of the question generated by the *Rund* decision, whether there was a causal connection between the work performed and the neurosis, was squarely presented and found to be no longer viable due to later (and more specific and earlier) decisions. Review of *Love* by the Supreme Court was requested and denied.

In *Gleason v. Samaritan Home,* 260 Kan. 970, 926 P.2d 1349 (1996), the Supreme Court was presented with a claimant who, while working at a nursing home, was struck by a patient.

The court found on the issue of psychological injuries:

"The crux of the Board's decision regarding psychological injury is its underlying conclusion that the claimant 'suffered [no] permanent functional impairment or any ongoing permanent work disability *as a result of this incident.*' (Emphasis added.) Traumatic neurosis is not compensable under the Workers Compensation Act absent a work-related physical injury. [*Followill,* 234 Kan. at 795-96.] Implicit in the conclusion of the Board is that the neurosis or psychological disability is not directly traceable to the physical injury. As noted above, the Board's conclusion is supported by substantial competent evidence." 260 Kan. at 977-78.

In other words, claimant had failed to establish a link between her physical injury and her psychological injury, if there was one. The *Rund/Ruse/Love* "causal connection" question apparently was not implicated.

From our analysis, we draw the following conclusions:

1. Traumatic neurosis is covered under the Workers Compensation Act if it results from a covered physical injury and meets the other requirements of the Act.

2. Traumatic neurosis caused by an emotional, nonphysical trauma on the job is not covered in Kansas by the Workers Compensation Act.

3. As stated in *Hayes*, 188 Kan. at 184, under the Workers Compensation Act, traumatic neurosis is to be treated like any other health problem. If a subsequent covered industrial accident aggravates, accelerates, or intensifies the disease or affliction, the worker is not to be denied compensation just because it is a pre-existing condition.

The peculiar facts in *Rund* may well have justified a finding that the claimant's aggravated psycho-sexual problem was unrelated to any inability to work. However, the attempt to equate dicta on that issue with an unstated reversal of the *Hayes* ruling on the compensability of certain aggravated mental problems is wrong.

Affirmed.