(207 P.3d 261)
No. 99,065 ∎

SANDRA K. ADAMS, *Appellee*, v. BALL'S FOOD STORES and FOUR B CORPORATION, *Appellants*.

Opinion filed October 3, 2008.

*Timothy G. Lutz* and *James L. MowBray*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, for appellants.

*Jeff K. Cooper*, of Topeka, and *Gary M. Peterson*, of Topeka, for appellee.

Before MCANANY, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: Ball's Food Stores appeals the decision of the Workers Compensation Board that Ball's Food's former employee,

Sandra Adams, suffered a permanent total disability. K.S.A. 44-510c(a)(2) says that a permanent total disability exists when a work-related injury has left the employee "completely and permanently incapable of engaging in any type of substantial and gainful employment." Ball's Food points to a great deal of evidence that would suggest that Adams could perform some light work duties. But substantial evidence supports the Board's conclusion that Adams was unable to work, so we are required to affirm its judgment given the limited standard of review in administrative appeals.

The Kansas Supreme Court recently noted in *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 189 P.3d 508 (2008), that the standard of review is "highly deferential" to the Board's factual conclusions. We look to be sure that substantial evidence supports the Board's conclusions, and we look at the evidence in the light most favorable to the prevailing party. We must uphold the Board's conclusion when it is supported by substantial evidence "even though other evidence in the record would have supported contrary findings." So our first and primary task in this case is to see whether substantial evidence, which is "something of substance and relevant consequence . . . [that] furnishes a basis of fact from which an issue can be resolved reasonably," supports the Board's conclusion. 286 Kan. at 780.

Substantial evidence supports the Board's conclusion that Adams is no longer able to engage in "substantial and gainful employment." K.S.A. 44-510c(a)(2). Dr. Ethan Bickelhaupt, a board-certified neurologist and psychiatrist with a subspecialty in geriatric psychiatry, testified that he did not believe the limitations caused by her work-related injuries allowed her to be gainfully employed at this time. He saw her in 2004, 2005, and 2006; he found her unchanged in 2006 over 2005 and concluded that "there's not an area that immediately is available to her for which she could achieve gainful employment on an ongoing and long-term basis."

Dr. Robert Barnett, a clinical psychologist, testified that Adams' ability even to do a light-duty job, like providing food samples in the grocery store, would be significantly impaired by her condition. He said that she could not be reliably depended on to perform even a part-time, light-duty job.

In addition, Adams testified that she quit performing the light-duty job she'd been given providing food samples because of the pain: "[I]t didn't work. I didn't finish out the shift. I had too much pain."

Many doctors, vocational experts, and other individuals also testified in this case. The parties are familiar with their testimony, and we will not review all of it in this opinion. We have carefully looked, however, to be sure that no *uncontradicted* evidence directly undercuts the Board's conclusion. See *Hall*, 286 Kan. at 781 (Board decision may be reversed if it arbitrarily disregarded undisputed evidence). We have not found such evidence. We will review the basic facts of the case to put into context the testimony of Dr. Bickelhaupt, Dr. Barnett, and claimant, and we will explain why we find it sufficient to support the Board's finding under the standard set out in *Hall*.

Adams worked at a Price Chopper Ball's Food Store in Leavenworth from 1992 until February 2004. She worked in the meat department, mainly wrapping meat. She had a work-related injury in 1999 for which she had carpal tunnel surgery in 2001 on both hands. She returned to her meat-wrapping job after that, but scar tissue was then discovered and attributed to her continued repetitive work activities. Adams then saw several doctors. Dr. Galate, to whom she was referred by Ball's Food, said that her work in the meat department was making her condition worse. Ball's Food then moved her to a position that involved pricing. But Adams still felt that she was unable to perform these duties for substantial time periods because of severe pain. Ball's Food tried to accommodate her with light-duty work, eventually in a position that included giving out food samples. But Adams said she was ultimately unable to do that job as well because of chronic, severe pain.

Ball's Food disputes her inability to work and points out that several medical doctors had limited her to lifting no more than 15 pounds and had said she should limit repetitive movements. But these doctors had not said she was unable to work at all. In addition, the doctors added that vocational experts had not concluded that she was unable to perform all the job tasks.

Adams' situation is complicated by her psychiatric or psychological condition. As the Board noted, "There is no dispute that [Adams] has chronic pain. There is also no dispute that as a result of that condition [Adams] developed a psychiatric condition," described in different terms by different experts but recognized in some form by ones hired by both sides. The Board also concluded, "The doctors all attributed [Adams'] psychological condition to her work-related injuries."

Lasting psychological effects of work-related injuries are compensable. *Gleason v. Samaritan Home*, 260 Kan. 970, Syl. ¶¶ 3-4, 926 P.2d 1349 (1996); *Helmstetter v. Midwest Grain Products, Inc.*, 29 Kan. App. 2d 278, Syl. ¶ 3, 28 P.3d 398 (2001); *Boutwell v. Domino's Pizza*, 25 Kan. App. 2d 110, 113-15, 959 P.2d 469, *rev. denied* 265 Kan. 884 (1998); *Adamson v. Davis Moore Datsun, Inc.*, 19 Kan. App. 2d 301, 308, 868 P.2d 546 (1994). Thus, the Board was free to rely upon both Adams' physical restrictions and her psychological restrictions in determining her disability.

Ball's Food does not dispute the legal rule that the psychological effects of work-related injuries are compensable. Instead, Ball's Food first argues that Adams didn't have a compensable psychiatric condition because no doctor or vocational expert specifically said she could not or should not perform any work-related activities. Ball's Food then argues that Adams said she quit because of pain, not a psychological issue, and she wasn't diagnosed with a psychological problem until several months after she quit working. Ball's Food then finishes its argument by returning to the lack of work restrictions, *i.e.*, no one told her she couldn't work and added that none of the experts gave her a 100% disability rating either. Although evidence supports Ball's Food on each of those points, evidence also supports the Board's conclusion.

Let's take the issue of disability ratings and work restrictions first. Physician opinions based on the American Medical Association Guides to the Evaluation of Permanent Impairment are the means generally required by statute for determining permanent partial disability ratings. K.S.A. 44-510e. But that's not what was required in Adams' case because the Board found Adams had a permanent *total* disability, which the statute defines simply as "when the em-

ployee, on account of the injury, has been rendered completely and permanently incapable of engaging in any type of substantial and gainful employment." K.S.A. 44-510c(a)(2). On this issue, the legislature has not required specific physician testimony or limited the basis of opinion testimony to a specific guidebook, as it did in K.S.A. 44-510e. Instead, except in cases involving loss of hands, eyes, feet, or legs, K.S.A. 44-510c(a)(2) requires simply that "permanent total disability shall be determined in accordance with the facts." Similarly, the statute does not require a physician's opinion that a person cannot physically perform any work-related tasks. Thus, the Board was free to consider all of the evidence in determining whether Adams was totally and permanently unable to work. Neither a 100% disability rating from a doctor nor a doctor's prohibition of work activities is required under K.S.A. 44-510c. See *Lyons v. IBP, Inc.*, 33 Kan. App. 2d 369, 376-78, 102 P.3d 1169 (2004) (affirming Board finding of permanent total disability on "totality of the circumstances approach" even though no medical doctor rated claimant 100% disabled); *Wardlow v. ANR Freight Systems*, 19 Kan. App. 2d 110, 115, 872 P.2d 299 (1993) (evidence that a claimant can perform part-time, sedentary-type work does not require reversal of the factual determination that claimant is permanently and totally disabled); see also *Graff v. Trans World Airlines*, 267 Kan. 854, Syl. ¶ 3, 983 P.2d 258 (1999) (medical testimony is not usually required for proof of existence, nature, or extent of disability of an injured worker under the Kansas Workers Compensation Act).

The Board noted that Adams testified she was "unable to work as a result of her chronic pain," testimony the Board as fact-finder certainly found credible. "Although her physical restrictions would not prevent her from working," the Board concluded, "it is the chronic pain that prevents her from working." The Board then relied on the testimony of Dr. Bickelhaupt and Dr. Barnett. Each doctor testified that in his opinion Adams could not maintain gainful employment, even part-time. So the Board concluded that Adams was permanently and totally disabled.

The Board's conclusion is not rebutted by Ball's Food's argument that Adams' psychological problems either were not diag-

nosed by February 2004 or may have developed somewhat after February 2004. Kansas workers compensation law does not require a medical condition to be diagnosed before an employee ceases work because the pain is too great to continue. In addition, so long as the psychological condition is a direct result of the work-related injury, as the evidence showed here, there is no reason that the psychological condition must have begun by the same date that the employee could no longer work because the pain was intolerable. Health problems may change as treatments are attempted and succeed or fail. So long as the workers compensation proceeding remains open, the Board must consider the claimant's condition as it exists. To the extent that disabilities are caused by work-related injuries, those disabilities are compensable.

Even a psychiatrist hired by Ball's Food concluded that Adams had a permanent psychiatric disorder that her work-related injuries caused. Dr. Patrick Hughes, a board-certified psychiatrist, examined Adams in 2004, 2005, and 2006. He assessed a 10% permanent partial impairment of the whole body from psychiatric distress. While he did not conclude that Adams was unable to work, Dr. Bickelhaupt and Dr. Barnett did. Their testimony, considered along with Adams' testimony, provides substantial evidence in support of the Board's conclusion.

Ball's Food based several of its arguments on K.S.A. 44-510e, which applies to permanent and temporary *partial* disability, while K.S.A. 44-510c applies to permanent and temporary *total* disability. See *Wells v. Waffle House, Inc.*, No. 91,334, unpublished opinion filed August 13, 2004, slip op. at 9-12 (noting distinction between coverage of K.S.A. 44-510c and 44-510e and affirming Board's finding of total disability notwithstanding argument that claimant may not have made efforts to find employment, which may preclude full award under K.S.A. 44-510e). Ball's Food's arguments based upon provisions of K.S.A. 44-510e are not cause to reject the Board's conclusion of total disability under K.S.A. 44-510c.

The decision of the Workers Compensation Board is affirmed.