No. 47,352

Genevieve Buck, *Appellant,* v. Beech Aircraft Corporation and Pennsylvania General Insurance Company, *Appellees.*

(523 P. 2d 697)

Opinion filed June 15, 1974.

*Jim Lawing,* of Jim Lawing, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Byron Brainerd,* of Weigand, Curfman, Brainerd, Harris & Kaufman, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: Genevieve Buck appeals from a decision of the district court under the Workmen's Compensation Act (K. S. A. 44-501, *et seq.*) awarding a ten percent permanent partial general disability for an injury to her knees and back and disallowing certain unauthorized medical expenses. The purpose of her appeal is to have this court determine she is totally disabled by reason of traumatic neurosis claimed to be traceable to the physical injury suffered five years previously.

On January 6, 1966, the claimant fell from a ladder while working for Beech Aircraft Corporation at Liberal, Kansas. She fell against a metal ladder and then to a cement floor, landing on her knees. The fall was from a height of approximately four feet. The job supervisor sent her to Drs. Reese and Holcomb in Liberal and she was examined and treated for superficial injuries. Shortly thereafter claimant and her husband moved to Wichita and claimant was again examined and received treatment from Drs. Kaufman and Weir over a period of the next six months. She continued to voice subjective complaints. X-rays of her knees and back showed no abnormalities. Claimant weighed over 240 pounds. She was able to flex her body and her knees normally. Deep tendon reflexes were normal. Although she complained of swelling and pain in legs, knees and back, the doctors noted no swelling during her visits.

In April, 1966, claimant sought other employment. She worked for Upton & Company in Wichita from April 26, 1966, to August 3, 1966. At one time during this period she was hospitalized at the Halstead Hospital but the nature of her illness is not disclosed in the record. During the first part of August, 1966, claimant moved to Oklahoma with her husband. Although not discharged she did not return to see the company's doctor in Kansas until December, 1968, two years later. In July and September, 1968, while in Oklahoma, claimant received surgery on both knees under the knife of a Dr. Wolfe, D. O. There is nothing in the record to establish the reason or necessity for the surgery in Oklahoma. It did involve her

knees. Claimant's attorney indicated on oral argument the surgery was neither necessary nor beneficial to claimant.

On December 4, 1968, claimant returned to Wichita and was again examined by Dr. Kaufman for Beech Aircraft Corporation, her former employer. At this time she had healing incisions on both knees, had limited flexibility, walked with a "limp" in both legs, and was not able to stand and walk without apparent difficulty. During the examination she refused to comply with requests of the doctor to walk on her heels and toes, and she refused to allow the doctor to obtain her correct weight. At this time she was again x-rayed. The x-rays of her back and knees appeared normal. During this examination (December, 1968) Dr. Kaufman noted a great deal of functional overlay and suggested psychiatric consultation. There appeared to be no physical reason for her complaints, other than marked obesity. Claimant did not seek psychiatric help. The workmen's compensation award from which the present appeal stems was entered by the examiner in January, 1972.

The claimant was examined by Samuel N. Harrell, a psychologist of the Wichita Psychiatric Center. This was at the request of her attorney in preparation for the hearing before the examiner. She was thereafter examined by C. J. Kurth, M. D., a Wichita psychiatrist, at the request of the attorneys for Beech Aircraft Corporation. We will discuss the testimony of these two doctors later.

Claimant contends on appeal the testimony of Dr. Harrell and Dr. Kurth, which includes their diagnoses and prognoses of claimant's condition, establishes her total permanent disability and the required causal connection as a matter of law.

Appellees do not question the ten percent award which was based upon permanent physical disability resulting from the fall. Neither do they question that claimant may now be totally disabled by reason of traumatic neurosis, but they deny that such additional disability was caused or precipitated by the work performed or the accident.

The district court refused to grant an award for the additional disability arising from traumatic neurosis. We interpret this as a finding that such disability was not caused or precipitated by the work being performed or the fall which occurred January 6, 1966.

The jurisdiction of the supreme court on appeal from the judgment of a district court in a workmen's compensation case is specifically limited to the determination of questions of law (K. S. A.

44-556). The question of whether or not a disability of a workman is due to a personal injury by accident arising out of and in the course of the employment is a question of fact. (*Jacobs v. Goodyear Tire & Rubber Co.*, 196 Kan. 613, 615, 412 P. 2d 986.) In a review of the record on a question of fact this court's function is limited to a determination of whether or not the record, viewed in a light most favorable to the party prevailing below, contains substantial competent evidence to support the district court's findings. If substantial, competent evidence appears, such finding is conclusive and will not be disturbed on appeal. (*Barr v. Builders, Inc.*, 179 Kan. 617, Syl. ¶ 2, 296 P. 2d 1106.)

Claimant's doctor, Samuel N. Harrell, testified he was a clinical psychologist, held no medical degree and was not licensed under the Kansas healing arts act. He testified concerning various tests administered to claimant in June, 1971. It was his professional opinion "Mrs. Buck manifested a psychosis schizophrenia, chronic undifferentiated type. This particular type of emotional difficulty [is] characterized by thought disorder, confusion, cognative disarray, unconscious material which is generally held down by a very strong ego." He further testified: "Anyone who has, like Mrs. Buck, relied *must* of her life on the . . . hysterical mechanism of using her body to ward off underlying psychoses would probably lose the ability to do that if she suffered trauma." He thought it would be a reasonable assumption that the accident was a contributing factor to her present psychological difficulties. Her condition at the time he saw her (June, 1971) was such that it impaired her ability to concentrate sufficiently to be employed steadily. He further testified: "I would say that the psychological trauma by the initial accident [January, 1966] could have been sufficient, or that the combination of that accident and subsequent psychological trauma . . . of the surgery [September, 1968] could have combined to present the current problem . . . of the patient. It's also possible that either one alone could have."

Dr. C. J. Kurth, a Wichita psychiatrist, testified that he and Dr. Henderson, a clinical psychologist, also administered in-depth testing to the claimant in June, 1971. On the basis of the examination and testing it was his opinion the claimant could not return to any type of gainful employment. After reviewing claimant's history and tests his further opinion was as follows:

"None of the preceding [traumatic neurosis] is the result of the accident in

my opinion; but rather is her life long pattern of adjustment. Any disability that she may claim is not/nor can not be attributed to the accident; but rather to the conflicting medical reports she has received. These reports resulted in her ultimately seeking surgery as a solution to her basic psychological problems."

Dr. Kurth further testified that he felt any present disability of Mrs. Buck, the claimant, was not attributable to her accident on January 6, 1966, but was attributable to her inability to understand the diverse medical treatment, including the surgery in Oklahoma, which occurred almost three years subsequent to her injury.

It is therefore apparent that these two witnesses disagreed as to the existence of a causal connection between the work being performed or the fall in January, 1966, and the general disability from traumatic neurosis which they discerned in June, 1971. In *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 506 P. 2d 1175, this court expresses words of caution to be considered in cases such as this. In *Berger* we say:

"Even though this court has long held that traumatic neurosis is compensable; we are fully aware that great care should be exercised in granting an award for such injury owing to the nebulous characteristics of a neurosis. An employee who predicates a claim for temporary or permanent disability upon neurosis induced by trauma, either scheduled or otherwise, bears the burden of proving by a preponderance of the evidence that the neurosis exists and that it was caused by an accident arising out of and during the course of his employment." (p. 550.)

Traumatic neurosis following physical injury is compensable under the Workmen's Compensation Act only if it is shown the neurosis is directly traceable to the physical injury (*Berger v. Hahner, Foreman & Cale, Inc.,* supra, Syl. ¶ 2) and the psyhiatric problem which causes the disability of the workman has a direct causal connection with the work performed or the physical injury. (*Rund v. Cessna Aircraft Co.,* 213 Kan. 812, Syl. ¶ 6, 518 P. 2d 518. See also *Randall v. Pepsi-Cola Bottling Co., Inc.,* 212 Kan. 392, 510 P. 2d 1190.)

In a workmen's compensation case if the claimant's psychiatric problems do not result from the nature and requirements of the claimant's work, or are the result of external forces over which the employer has no control, there is no causal connection between the claimant's mental disability and the injury or the work being performed, and compensation cannot be awarded for the mental disability. (*Rund v. Cessna Aircraft Co.,* supra.)

In addition to the opinion testimony of Dr. Kurth there was testi-

mony that claimant was able to and did work for Upton & Company in Wichita after her fall. This employment covered a period of three months. Later she underwent surgery in Oklahoma of doubtful purpose and need, unauthorized by either the employer or the director. At the time her claim was finally heard, some five years after her fall, there is no doubt that both her physical and emotional difficulties had increased to a marked degree. However, there was "substantial evidence", as that term is defined in the syllabus ¶ 2 of *Rund v. Cessna Aircraft Co.*, supra, from which the district court could and did find the additional disability from traumatic neurosis was not caused or precipitated by the fall which occurred January 6, 1966. It is the proper function of the district court in a workmen's compensation case to pass upon the facts in evidence. The court in evaluating the evidence in this case merely arrived at a different conclusion than was urged by the claimant. Its finding in this regard is conclusive and will not be disturbed on appeal.

Claimant next contends that the district court erred in disallowing over $5,000.00 in medical services incurred by her for surgery and hospitalization in Oklahoma. There is no testimony in the record to establish the specific nature or purpose of these services and nothing to indicate they were made necessary by claimant's fall from the ladder on January 6, 1966. These medical services were sought and obtained almost three years after the injury. They were obtained by claimant without authorization from either the former employer or the director. There is no showing the services were "reasonably necessary to cure and relieve the workman from the effects of the injury" as contemplated and required by K. S. A. 44-510. It therefore follows the district court did not err in disallowing such claim for medical services.

Claimant further contends that the employer neglected to reasonably provide prompt psychiatric care for claimant and that her misguided efforts in Oklahoma to alleviate her emotional difficulties should be charged to the employer. What has been heretofore said disposes of this contention. The traumatic neurosis was found by the trial court to have resulted from causes other than her injury on the job. The employer was not required by the compensation act to furnish these medical services.

Claimant's final contention is that the trial court erred in failing to allow $116.00 for medical services incurred by claimant for the psychological testing administered by Samuel N. Harrell in prep-

aration for trial. Even if the services were unauthorized, claimant contends she should have been paid at least $100.00 as provided in K. S. A. 44-510.

The foregoing statute places a duty on the employer to provide the services of a physician or surgeon and other medical and hospital treatment. If the employer has knowledge of the accidental injury and refuses or neglects to reasonably provide benefits, the employee may provide the same and the employer shall be liable therefor. If the services of the physician or surgeon furnished by the employer are not satisfactory to the injured workman the director may authorize the appointment of some other physician or surgeon. However, claimant did not at any time indicate to her employer or to the director that the services of the various physicians furnished were unsatisfactory. She did not ask the director to authorize the appointment of another physician as required by Rule 51-9-4 promulgated by the Director of Workmen's Compensation pursuant to law. (Vol. 2, Kansas Administrative Regulations 51-9-4.) No refusal or neglect by the employer was shown.

K. S. A. 44-508b provides:

"Wherever the words physician, surgeon or doctor appears in the articles 5 and 5a of chapter 44 of the Kansas Statutes Annotated they shall mean and include any person licensed under the Kansas healing arts act, or any licensed dentist, optometrist, or podiatrist."

The pertinent part of K. S. A. 44-510 relating to unauthorized medical services on which Claimant relies provides:

". . . That if the services of a physician or surgeon furnished as above provided are not satisfactory to the injured workman, said workman may, without the approval of the director, consult another physician or surgeon of his own choice, and the employer shall pay the fees and charges therefor, provided that such fees and charges are for examination, diagnosis, or treatment, not exceeding a total amount of one hundred dollars ($100)."

We note this provision in the statute specifically limits unauthorized consultations to physicians or surgeons and the preceding statute (K. S. A. 44-508b) defines a physician or surgeon as those persons licensed under the Kansas healing arts act. Dr. Samuel N. Harrell was not licensed as provided in K. S. A. 44-508b, his examination was not made under the direction of a licensed practitioner and the fees and charges for his examination and diagnosis do not come within the provisions for payment of unauthorized medical services authorized in K. S. A. 44-510.

Accordingly the judgment is affirmed.