No. 48,063

Leamon Hardman, (Claimant) *Appellee* v. City of Iola, Kansas (Respondent) and Western Casualty & Surety Co. (Insurance Carrier), *Appellants.*

(549 P. 2d 1013)

Opinion filed May 8, 1976.

*J. D. Conderman,* of Conderman & Talkington, of Iola, argued the cause and was on the brief for the appellants.

*Mitchell H. Bushey,* of Iola, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is a workmen's compensation case. The appeal is by the employer and its insurance carrier (hereafter referred to as respondents) from a judgment of the trial court which raised the director's award of twenty percent permanent partial disability to permanent total disability.

The basic question presented is whether there is any competent evidence supporting the trial court's judgment awarding claimant compensation on a basis of permanent total disability under K. S. A.

1974 Supp. 44-510c (*a*), now 1975 Supp. The principal contention of respondents is that compensation should have been determined by application of statutory provisions for scheduled injuries. (K. S. A. 1974 Supp. 44-510d, now 1975 Supp.)

While there is some dispute as to the interpretation to be given the medical testimony, the evidence is essentially undisputed.

At the time of the accident, claimant had been employed by the City of Iola as an electrical lineman for fourteen years. He started as a groundman and had been promoted to lineman. Claimant described his duties as climbing poles; handling high voltage electric hot lines; cutting hot lines; and doing other prescribed work.

On September 26, 1972, claimant was injured when he grabbed a 7200 volt hot line and was knocked to the ground. He was taken to the Allen County Hospital where he remained for thirty-three days under the care of Dr. Gerald Pees. Claimant was then referred by Dr. Pees to the Kansas University Medical Center and was placed under the care of Dr. David Robinson, a plastic surgeon. After surgery on both hands and his buttocks claimant was released to outpatient status on January 4, 1973. He continued to see Dr. Robinson as an outpatient—until November 19, 1973.

Claimant returned to work for the City of Iola in April 1973. At the time of the hearing before the examiner in February 1974, claimant was working as a groundman at a reduction in pay of sixty cents per hour.

The issues presented to the examiner were (1) the nature and extent of claimant's disability; and (2) the amount of compensation due. There was substantial disagreement among the examiner, the director and the trial court on these issues, but none of them treated claimant's injuries as scheduled injuries under 44-510d.

The examiner allowed claimant sixty weeks temporary total disability at $56 per week from the date of the accident until his release from Dr. Robinson's care, thereafter 355 weeks of fifty percent permanent partial disability at $44.40 per week. On appeal by respondents, the director modified the award and found permanent partial disability of twenty percent. Claimant then appealed to the district court which found permanent total disability and awarded the maximum benefit under the statute, effective at that time, at the rate of $56 per week for 415 weeks.

The trial court found that claimant had suffered a permanent partial loss of use of the index finger and middle finger of his left hand and no longer had the ability to grip or make a tight fist; and

that he had suffered similar injuries to the index and second fingers of his right hand and no longer had the ability to grip or make a tight fist with his right hand. The trial court further found:

". . . Having suffered permanent partial functional loss of use of both the left and right hands, which in accordance with the provisions of K. S. A. 44-510c (a), as determined in *Honn v. Elliott*, 132 Kan. 454, claimant's injuries fall in the category of a non-scheduled injury as set out in K. S. A. 44-510 (e); and as a result of the partial functional loss of use of both hands which makes it impossible to grip wire and tools tightly with either hand, the claimant is incapable of obtaining on the open job market, and performing and retaining, work of the same type and character that he was able to do prior to the accident and the injuries as described herein. In addition to the partial functional loss of use of both hands, the plaintiff also suffers intermittent muscular spasms in his chest, legs and arms.

"The medical testimony is that such spasms or cramps, though rather severe in the beginning, tend to diminish in time. Nothing was offered to indicate medically when the spasms might commence to diminish or terminate. The intermittent muscular spasms in his chest, legs and arms, in conjunction with the partial loss of use of his hands, make it impossible for the claimant to obtain on the open job market, and perform and retain, work of the same type and character that he was able to do prior to the accident and the injuries described herein."

Respondents first contend that statutory schedules for injuries to fingers should have been the basis for claimant's permanent disability award. This contention frames the basic dispute between the parties. It is respondent's position that the award for permanent disability should have been limited to the statutory schedule for injuries to fingers provided by 44-510d. Claimant, on the other hand, takes the position that since there was a partial loss of the use of both hands K. S. A. 44-510c (a) was the applicable statute rather than 44-510d, and that disability as a nonscheduled injury was the proper basis for the award. Claimant further says that the injuries to both hands, coupled with other bodily injuries (muscle spasms), under the rule of *Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414, mandate an award for permanent total disability. The examiner, the director and the district court, all rejected the scheduled injury theory advanced by respondents.

At the outset, it should be noted that in this case we are concerned with disability stemming from a primary injury, as distinguished from that line of cases involving a situation where the injury results in objective physical damage to a member of the workman's body, which is included in the schedule under 44-510d, where an unscheduled part of his body also becomes disabled as a direct and natural consequence of the damage to the scheduled

member. (See *Jackson v. Stevens Well Service,* 208 Kan. 637, 493 P. 2d 264; *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 506 P. 2d 1175; *Bergemann v. North Central Foundry, Inc.,* 215 Kan. 685, 527 P. 2d 1044; *Chinn v. Gay & Taylor, Inc.,* 219 Kan. 196, 547 P. 2d 751; and *Reese v. Gas Engineering & Construction Co.,* 219 Kan. 536, 548 P. 2d 746.

In support of their position that statutory schedules for loss of the use of fingers must apply, respondents cite several cases involving injuries to fingers or thumbs which were held to be scheduled injuries. They rely heavily on *Gallivan v. Swift & Co.,* 136 Kan. 234, 14 P. 2d 665, wherein this court modified a district court's judgment awarding compensation for injury to claimant's left hand in an award for loss of use of two injured fingers according to the statute schedule. In *Gallivan,* claimant suffered a slight surface injury to the palm of his hand which had healed. In modifying the judgment below this court said:

". . . Since the specific injury resulting from the accident was confined to the loss of use of the fingers, compensation must be measured according to the statutory schedule. . . ." (p. 236.)

In the instant case, claimant suffered injury to the palms of both hands as well as to other portions of his body.

Other cases cited by respondents on the point are, likewise, distinguishable from the case at bar in that the injuries were confined exclusively to a finger as in *Gallagher v. Menges & Mange Const. Co.,* 146 Kan. 506, 72 P. 2d 79, or to thumbs as in *Wammack v. Root Manufacturing Co.,* 184 Kan. 367, 336 P. 2d 441; and *Neuhaus v. Hope Engineering Co.,* 132 Kan. 72, 294 Pac. 655.

In the instant case the trial court did not find claimant's injuries to be confined to his fingers, but rather that claimant had suffered partial loss of the use of both hands. We believe the finding is supported by the testimony of claimant and Dr. David W. Robinson. Claimant testified that he could not form a fist or grip with his right hand and that his left hand was worse; that he had no grip except for his left little finger; and that it was painful to attempt to grip with either hand. He further testified that: "It is painful to try to grip with my hands because it pulls on the tendons and leaders."

Dr. Robinson testified that when he first saw claimant he had healing burns on both hands and his left buttock and that:

". . . His worst trouble was with his right hand but he had trouble

also with his left hand. He had a scar on the palm of his right hand that was drawing the fingers toward the palm. We excised the scars on both hands and put on skin grafts and a skin graft to cover the large burn on his right buttock. . . ."

It has been stated many times that in reviewing the record in workmen's compensation cases this court's function is limited to a determination whether the record, viewed in the light most favorable to the party prevailing below, contains substantial competent evidence to support the trial court's findings. (*Deines v. Greer,* 216 Kan. 548, 532 P. 2d 1257; and *Buck v. Beech Aircraft Corporation,* 215 Kan. 157, 523 P. 2d 697.) The term "substantial competent evidence," when applied by this court in reviewing a workmen's compensation award, means evidence possessing something of substance and relevant in consequence, and carrying with it fitness to conclude conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved. (*Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 518 P. 2d 518.)

We believe the undisputed evidence of scars large enough to require skin grafts on each hand, together with the other testimony of claimant and Dr. Robinson, is sufficient to meet the test of substantial competent evidence that claimant's injuries extend to the hands proper.

Respondents next challenge the trial court's application of the rule in *Honn v. Elliott,* 132 Kan. 454, 295 Pac. 719. In *Honn* claimant sustained injuries to both feet in a fall. The trial court found that claimant suffered a permanent partial loss of the use of each foot. No other unscheduled injuries were involved. The court rejected respondent's contention on appeal that compensation should have been computed upon a basis of scheduled injury to each foot under R. S. Supp. 1930, 44-510 (3) (c), now K. S. A. 1975 Supp. 44-510d (a). The thrust of the *Honn* decision is that when two feet or two hands are injured compensation should not be computed under R. S. Supp. 1930, 44-510 (3) (a), now K. S. A. 1975 Supp. 44-510d (a). In other words, under the *Honn* rule when once a finding is made that both hands (not merely the fingers) are partially disabled the rule applies to remove the disability from the category of exclusively scheduled injuries. On the other hand, in the absence of a finding of partial loss of use of *both hands* and also absent a finding of other unscheduled injuries then, and in that case, the injuries to claimant's fingers would be limited to compensation exclusively under the statutory schedule. (See *Wam-*

*mack v. Root Manufacturing Co.,* supra.) The rule in *Wammack,* however, does not control the instant appeal, as argued by respondents, because there is a finding supported by substantial competent evidence of a partial loss of use of both hands, as well as evidence of other unscheduled injuries.

The decision in *Honn* has been followed or distinguished in many subsequent cases. (*Jackson v. Stevens Well Service,* supra; *Wammack v. Root Manufacturing Co.,* supra; *Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. 2d 708; and *Hurst v. Independent Construction Co.,* 136 Kan. 583, 16 P. 2d 540.)

Respondents further contend that even if claimant's injuries are considered as partial loss of use of hands, as the trial court found, there must be evidence of other related injuries in order to support a finding of either temporary or permanent total disability. Respondents argue there is no evidence at all to support a finding that the muscle spasms of claimant are permanent. They point out an excerpt from Dr. Robinson's testimony, on cross-examination, that cramps in the leg, such as those complained of by claimant, tend to diminish in time. Dr. Robinson testified that he was not able to find any objective reason as to why claimant suffered the cramps and muscle spasms complained of, but he thought claimant was telling the truth because he had found other burned patients with the same complaint with similar type of injuries and "I can't prove they have this injury by any objective or scientific means, but the fact is, people do have cramps in their legs and it is disabling."

Claimant testified on February 2, 1974, approximately fifteen months after the accident, that he was still suffering muscle spasms in his chest; that he had cramps in his legs and arms; and that he was still under the care of Dr. Schmaus and getting medicine which relieved the cramps. He testified that, "As long as I take the medicine prescribed by Dr. Schmaus for my muscle spasms I am able to do the work I am doing now."

It is true there is no medical testimony that claimant's muscle spasms or cramps might be of a permanent character. On the other hand, there is no evidence they would ever terminate or even that they have diminished since the accident. In this jurisdiction it is not essential that the duration of disability or incapacity of a workman be established by medical testimony. (*Hanna v. Edward Gray Corporation,* 197 Kan. 793, 421 P. 2d 205; *Bull v. Patti Const. Co.,* 152 Kan. 618, 106 P. 2d 690; *Cowan v. Kerford Quarry Co.,* 146 Kan. 682, 72 P. 2d 999; and *Hardwell v. St. Louis S. & R. Co.,* 146 Kan. 870, 73 P. 2d 1120.)

Finally, respondents contend the judgment of permanent total disability is in effect a misconception of the law and contrary to the legislative concept expressed in K. S. A. 1974 Supp. 44-510c (*a*) (2), now 1975 Supp. The principal argument of respondents on this point is that the trial court erroneously applied the rule announced in *Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414. In *Puckett* the many cases in which this court has considered tests for determining loss of earning capacity within the theory underlying the Workmen's Compensation Act are reviewed. The conclusion reached by the court is expressed in our holding in paragraph 2 of the syllabus:

"The correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured."

Respondents point out that *Puckett* dealt with permanent partial disability and the rule therein should not be applied in the case of permanent total disability such as that at bar. We do not read into the *Puckett* decision any such restriction of the application of the rule. In fact the case of *Taber v. Tole Landscape Co.*, 188 Kan. 312, 362 P. 2d 17, is cited in the *Puckett* opinion. In *Taber* the same rationale expressed in *Puckett* was made applicable to cases where the facts justify a finding of total disability. The question for the trier of facts being only to determine the ability of the worker to obtain, retain and perform work of the same type and character of which he was previously capable. The testimony of claimant, Dr. Robinson and the claimant's foreman, Clarence L. Cochran, is ample to support the trial court's findings in this regard.

Respondents make reference to a change in 44-510c made by the 1974 legislature. Respondents contend the amendment appearing in subsection (*a*) (2) appears to be a new definition of permanent total disability and contradicts previous decisions of this court upon which the trial court relied. The amendment in question became effective July 1, 1974. It was one of many amendments to the Workmen's Compensation Act made effective at that time. Some of the amendments appear to favor the employer, others the workman. We are cited no authority and, in fact, are given no reason to give retroactive application to the amendment as suggested by respondents.

For the reasons stated the judgment is affirmed.

Prager, J., not participating.